UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EBONY DURR,

        Plaintiff,           CIVIL ACTION NO. 12-11840

                                       DISTRICT JUDGE SEAN F. COX

        v.                        MAGISTRATE JUDGE MARK A. RANDON

BANK OF AMERICA, N.A.,
FIRST FRANKLIN FINANCIAL CORPORATION,

        Defendants.
_____/

**<u>REPORT AND RECOMMENDATION TO GRANT
DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR,
ALTERNATIVELY, SUMMARY JUDGMENT (DKT. NO. 18)</u>**

**I.    INTRODUCTION**

This is a *pro se* home-mortgage foreclosure case.[1] Ebony Durr claims Defendants, First Franklin Financial Corporation ("First Franklin") and its mortgage loan servicer Bank of America, N.A., demanded unnecessary escrow payments, violating her loan modification agreement and forcing her mortgage into foreclosure. Durr filed a lawsuit in Oakland County Circuit Court to unwind the foreclosure, reinstate the modified loan, and obtain monetary damages; Defendants timely removed the action to this Court.

Defendants' motion for judgment on the pleadings or, alternatively, summary judgment is pending (Dkt. No. 18). Judge Sean F. Cox referred the motion to this Magistrate Judge for a report and recommendation. After Durr responded and Defendants replied, the Court heard

---

[1]Plaintiff was represented by counsel; he was allowed to withdraw in June of 2013.

argument. As more fully discussed below, this Magistrate Judge **RECOMMENDS** that Defendants' motion be **GRANTED** and Durr's case be **DISMISSED WITH PREJUDICE** because: (1) Durr's original mortgage loan and modification agreement required her to establish and maintain an escrow account sufficient to cover outstanding taxes; (2) Durr admits that she failed to make several mortgage payments in 2009 – before the modification – and stopped making payments under the modification agreement in 2010; and, (3) she has provided no evidence to contradict Defendants' statements showing her escrow account was significantly underfunded.

## II.   BACKGROUND

In 2005, Durr borrowed $174,250.00 from First Franklin to purchase a home in Oak Park, Michigan ("the Property"); she promised to repay the loan in 360 monthly installments of $1,159.29 (Dkt. No. 18; Ex. A, Adjustable Rate Note). Durr secured the loan with a mortgage to First Franklin that encumbered the Property (Dkt. No. 18; Ex. C, Mortgage). The Mortgage included a "Funds for Escrow Items" provision:

> [Durr] shall pay to [First Franklin] on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property . . . [and] (c) premiums for any and all insurance required by [First Franklin.] . . . [Durr] shall pay [First Franklin] the Funds for Escrow Items unless [First Franklin] waives [Durr's] obligation to pay the Funds for any or all Escrow Items. . . . [First Franklin] may, at any time, collect and hold the Funds in an amount (a) sufficient to permit [First Franklin] to apply the Funds at the time specified under [the Real Estate Settlement Procedures Act ("RESPA")], and (b) not to exceed the maximum amount a lender can require under RESPA.

(*Id.* at pp. 4-5).[2] The mortgage was recorded (Dkt. No. 18; Ex. C) and subsequently assigned to Citibank, N.A., as Trustee for First Franklin (Dkt. No. 18; Ex. D, Assignment of Mortgage). Durr experienced financial hardship in 2009, and admits that she failed to make several payments on the loan (Dkt. No. 1; Verified Compl. at ¶¶ 6-7).

Durr requested a loan modification. In response, First Franklin sent Durr a letter dated January 27, 2009, requesting financial information to support her eligibility for a modification (Dkt. No. 1, Verified Compl., Ex. 1 at p. 36). The letter indicated that Durr would be "required to establish an escrow account for taxes as part of a modification" (*Id.*). On August 7, 2009, First Franklin established the following conditional payment plan as a prerequisite to a permanent loan modification:

| DUE DATE | AMOUNT DUE | APPLIED TOWARD |
|---|---|---|
| 08/12/09 | $2100.00 | Contribution to escrow. |
| 09/12/09 | $850.00 | Contribution to escrow. |
| 10/12/09 | $850.00 | Contribution to escrow. |

(Dkt. No. 1, Verified Complaint, Ex. 2 at p. 39). Durr's request for a loan modification was approved on November 2, 2009:

| | |
|---|---|
| Interest Rate<br>([five] [y]ear fixed rate/continuing adjustable rate feature) | 3.000% |
| Term | 310 months |
| Maturity Date | October 1, 2035 |
| New Principal Balance | $136,550.89 |
| New Interest Only Payment Amount | $341.38 |
| New Interest Only/Escrow Amount | $942.44 |

---

[2] All page numbers refer to CM/ECF pagination.

| | |
|---|---|
| New Interest Only Payment Effective Date | January 1, 2010 |
| Amount of Principal Balance Postponed | $50,000.00 |

(Dkt. No. 1, Verified Compl., Ex. 3 at p. 44). Durr was notified that the total monthly payment of $942.44 would "change if an analysis of [her] escrow account result[ed] in a change to the amount of [her] escrow" (*Id.*). The modification agreement dated November 2, 2009 stated:

1. [Durr] shall pay all accrued interest and any other fees and costs due under the Promissory Note or Security Instrument, as modified by this Modification Agreement.

2. The interest rate on said Promissory Note will remain fixed at 3.000% for [five] years from the date of this Modification Agreement. After said [five] year fixed-rate period, [Durr] understands that the interest rate will then be adjustable on a periodic basis, pursuant to the same adjustable rate index as set forth in the Promissory Note.

3. [Durr's] monthly payment for the [five] year fixed-rate period shall be **$341.38**. Such installments shall be due and payable on the 1st day of each month, beginning 01/01/2010. After said [five] year fixed-rate period, interest will be charged on the Unpaid Principal Balance at an annual rate which will adjust, and [Durr] will pay monthly payments of principal and interest in U.S. dollars (which does not include any required escrow amounts), accordance with the following schedule:

   | | |
   |---|---|
   | **INTEREST RATE:** | **3.000** |
   | **INTEREST RATE CHANGE DATE:** | **12/01/2009** |
   | **PAYMENT DUE DATE:** | **01/01/2010** |
   | **MONTHLY INTEREST ONLY PAYMENT:** | **$341.38** |

   \*   \*   \*

5. [Durr] agrees that the establishment and maintenance of an escrow account for the payment of taxes is required for the remaining life of the loan.

(Dkt. No. 18; Ex. E, Modification Agreement at pp. 3-4) (bold in original).

On March 23, 2010, First Franklin sent Durr an "Annual Escrow Account Disclosure Statement." The statement indicated that Durr's projected escrow account balance as of April 30, 2010 would be -$4,521.87 and that her account was underfunded by a total of $7,322.08 (Dkt. No. 1, Verified Compl., Ex. 18 at pp. 103-04). Notwithstanding this deficiency, Durr admits that she stopped making payments under the modification agreement "sometime in 2010" (Dkt. No. 18; Ex. B, Durr's Dep. at p. 8).

Durr was notified that the servicing of her loan would transfer from First Franklin to Bank of America beginning October 16, 2010 (Dkt. No. 18; Ex. F). Bank of America sent Durr a statement dated October 28, 2010 that said she owed $1,121.86; the statement showed an escrow shortage of $8,948.41 (Dkt. No. 1, Verified Compl., Ex. 5 at p. 57). A statement dated December 31, 2010 from Bank of America said Durr owed $1,321.07 and showed an escrow shortage of $9,026.16 (Dkt. No. 1, Verified Compl., Ex. 5 at p. 58). According to Bank of America, Durr's interest-only payment due March 1, 2011 was $1,711.16 (Dkt. No. 1, Verified Compl., Ex. 6 at p. 60).[3] On September 13, 2011, Bank of America sent Durr a Notice of Intent to Accelerate, stating that the total amount required to reinstate the loan was as follows:

| | | |
|---|---|---|
| Monthly Charges: | 08/01/2010 | $5,609.30 |
| | 01/01/2011 | $11,889.63 |
| Late Charges: | 08/01/2010 | $51.21 |
| Other Charges: | Total Late Charges: | $338.87 |
| | Uncollected Costs: | $1,441.00 |
| | Partial Payment Balance: | $0.00 |

---

[3]"The Interest-Only Payment [did] not include any amount for principal. This mean[t] that none of the money [Durr] pa[id] [went] toward paying back the amount [she] borrowed, and that the outstanding balance on [her] loan d[id] not go down" (Dkt. No. 1, Verified Complaint, Ex. 6 at p. 60).

       **TOTAL DUE**:    $19,330.01

(Dkt. No. 1, Verified Compl., Ex. 8 at p. 65).

  On November 8, 2011, Trott & Trott – which represented Bank of America – sent Durr a letter informing her that she could request a meeting, attempt to work out a loan modification, and avoid foreclosure (Dkt. No. 18; Ex. H).  Durr requested a meeting, and Trott & Trott asked Durr to submit copies of financial information within 10 days to determine her eligibility for a loan modification (Dkt. No. 18; Ex. I).  In a letter dated December 23, 2011, Trott & Trott informed Durr that it could not determine whether she was eligible for a loan modification because she did not submit the requested financial information.  The letter further stated that "[i]f documentation is not received [Trott & Trott] may proceed with foreclosure on or after February 6, 2012" (Dkt. No. 18; Ex. J).  Durr did not respond and a Sheriff's sale was scheduled.  Durr filed suit.  The Sheriff's sale did not go forward; to date, Durr remains in the Property but has not made any additional payments.

## III. STANDARD OF REVIEW

  The standard of review applicable to motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is the same as the standard for motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998).

  Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  But the court "need not

accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). "[L]egal conclusions masquerading as factual allegations will not suffice." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). Dismissal is appropriate if the plaintiff failed to offer sufficient factual allegations that make the asserted claim plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009).

A court may consider a document that is not formally incorporated by reference or attached to a complaint if the document(s) is referred to in the complaint and is central to the plaintiff's claim. *See Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999). The Court's consideration of the document(s) does not require conversion of the motion to one for summary judgment. *Id.* In an action challenging a mortgage foreclosure or a failure to make required loan disclosures, this consideration may include documents "exchanged between Plaintiffs and their mortgage lender at the time of the mortgage transaction at issue[.]" *Marshall-Ford v. Wells Fargo Mortgage*, No. 08-15277, 2009 WL 2849524, at *1 n. 3 (E.D. Mich. Aug. 31, 2009). A court may also consider "matters of public record" when considering a motion to dismiss under Rule 12(b)(6). *See Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

Summary judgment must be granted "if the movant shows that there are no genuine issues as to any material fact in dispute and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a); *Care To Live v. Food & Drug Admin.*, 631 F.3d 336, 340 (6th Cir. 2011). The standard for determining whether summary judgment is appropriate is whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Pittman v. Cuyahoga County Dep't of Children Servs.*, 640 F.3d 716, 723 (6th Cir.2011) quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). The court must draw all justifiable inferences in favor of the party opposing the motion. *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 676 (6th Cir. 2011). However, the nonmoving party may not rely on mere allegations or denials, but must "cit[e] to particular parts of materials in the record" as establishing that one or more material facts are "genuinely disputed." Rule 56(c)(1). A mere scintilla of evidence is insufficient; there must be evidence on which a jury could reasonably find for the non-movant. *Hirsch v. CSX Transp., Inc.*, 656 F.3d 359, 362 (6th Cir. 2011).

**IV.   ANALYSIS**

   ***A.   Count I - Breach of Contract***

To succeed on her breach of contract claim, Durr must plead and prove: (1) the existence of a valid contract; (2) its terms; (3) a breach of those terms; and, (4) that the breach caused her injury. *Webster v. Edward D. Jones Co, LP*, 197 F.3d 815, 819 (6th Cir. 1999); *New Freedom Mortg. Corp v. Globe Mortg. Corp.*, 281 Mich. App. 63, 69 (2008). Durr claims that her modification payment of $942.31 included an escrow payment of $601.06, which should have been sufficient to cover the property taxes, and Bank of America "had no authority to increase the payments to $1,100.00 as they were not a party to the modification . . . or owner of the indebtedness" (Dkt. No. 22, p. 5).

Durr's modification was approved in November of 2009; the new $942.31 payment began January of 2010. But she was behind in her payments before the modification: she admits missing several payments in 2009. She also stopped making payments under the modification agreement – "sometime in 2010" – just a few months after it was approved.[4] These missed payments caused a significant deficiency in her escrow account: First Franklin's March 2010 escrow statement to Durr shows the account was underfunded by thousands of dollars *before* it transferred the servicing of the loan to Bank of America. Because Durr's original mortgage and modification agreement permitted First Franklin to collect and hold funds sufficient to cover property taxes; Durr's escrow account was underfunded as a result of her admitted non-payments; and, Bank of America was not required to "own the indebtedness" to service the loan,[5] Durr has failed to plead and cannot prove a breach of the modification agreement.

### B.     *Count II - Promissory Estoppel*

"The elements of equitable or promissory estoppel are (1) a promise; (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee; (3) which in fact produced reliance or forbearance of that nature; and, (4) in circumstances such that the promise must be enforced if injustice is to be avoided."

---

[4] Durr did make payments in January, February, and March of 2010 (Dkt. No. 1, Verified Complaint, Ex. 18 at pp. 103-04).

[5] "Michigan law defines a 'mortgage servicer' as the 'servicing agent of the mortgage' and distinct from the 'mortgage holder.' Mich. Comp. Laws § 600.3205(3)(b)-(c); cf. Mich. Comp. Laws § 445.1651 a(s), (aa) (defining a "mortgage servicer" as a person who collects or remits, or has the right or obligation to collect or remit, for a lender, noteowner, or noteholder); *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 357 n. 2 (6th Cir. 2013). *See also* § F, supra.

*Marrero v. McDonnell Douglas Capital Corp.*, 200 Mich. App. 438, 442 (1993) (citation omitted). "The doctrine of promissory estoppel comes into play where the requisites of contract are not met, yet the promise should be enforced to avoid injustice." *Manwaring v. Martinez,* ___ F. A'ppx ___, 2013 WL 2364142 , at *7 (6th Cir. 2013) (quoting *Olympic Holding Co., L.L.C. v. ACE Ltd.*, 122 Ohio St.3d 89, 909 N.E.2d 93 (Ohio 2009)).

The modification agreement was proper and enforceable: all of the requisites of contract were met. And, neither First Franklin nor Bank of America made Durr any "promises," outside of the explicit terms contained in the mortgage and modification agreement. As such, Durr has failed to plead and cannot prove a claim of promissory estoppel.

### C. Fraud Claims

Durr's Complaint contains counts of: (1) fraud and misrepresentation (Count IV); (2) silent fraud (Count V); and, (3) breach of fiduciary duty and constructive fraud (Count VIII). Actionable fraud requires Durr to prove six elements:

> (1) [Defendants] made a material representation; (2) the representation was false; (3) when [Defendants] made the representation, [they] knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) [Defendants] made the representation with the intention that [Durr] would act upon it; (5) [Durr] acted in reliance upon it; and (6) [Durr] suffered damage.

*M & D, Inc. v. W.B. McConkey*, 231 Mich. App. 22, 27 (1998) (citations omitted). Michigan courts have further recognized that "silence cannot constitute actionable fraud unless it occurred under circumstances where there was a legal duty of disclosure." *M&D, Inc. v. W.B. McConkey*, 231 Mich. App. 22, 29 (1998) (citing *U.S. Fidelity and Guaranty Co. v. Black*, 412 Mich. 99 (1981)).

Durr alleges that Defendants: (1) made misrepresentations regarding the servicer "honor[ing] the loan agreement"; (2) "transmitted documents that mislead and solicited re-modifying the loan agreement [knowing] there was a modification already in place"; and, (3) "demanded excessive payments and/or re-modification of an already permanently modified loan obligation and caused to be sent to [Durr] conflicting amounts for the cost of forced place insurance" (Dkt. No. 1, Verified Compl., p. 22, ¶ 9; p. 24, ¶¶ 2, 7).

Durr testified at her deposition that she could not specify the nature of any affirmative misrepresentations (or omissions of information required to be disclosed) that Defendants allegedly made to her; she simply suspected fraudulent behavior (Dkt. No. 18, pp. 23-24). This, of course, is insufficient to establish fraud, and the documents of record – setting forth her obligations under the modification agreement – belie even Durr's suspicions.

### D.   *Unclean Hands and Specific Performance*

A party seeking equitable relief cannot have unclean hands.  Durr alleges Defendants had unclean hands and seeks specific performance.  However, the doctrine of unclean hands cannot be applied against Defendants because foreclosure by advertisement is not an equitable action. *Mission of Love v. Evangelist Hutchinson Ministries*, No. 266219, 2007 WL 1094424, at *4 (Mich. Ct. App. April 12, 2007) (unclean hands doctrine held inapplicable because "defendants were not seeking relief in equity. Their title obtained through the mortgage foreclosure was based in law").

Specific performance is an equitable remedy.  But, it is unavailable to Durr for at least two reasons.  First, Durr is, ironically, subject to the doctrine of unclean hands, having admittedly failed to make several payments on both her original and modified loan. *See*

*Vanderhoof v. Deutsche Bank Nat. Trust*, No. 12-10305, 2013 WL 784648, at *6, n. 4 (E.D. Mich. Mar. 1, 2013) (plaintiffs' admission that they stopped making loan payments bars their quiet title claim). Second, as discussed above, Defendants did not breach the modification agreement or engage in any fraudulent conduct that would require this Court to exercise its powers in equity.

### E.     Unjust Enrichment

To state a claim for unjust enrichment, Durr must show that: (1) Defendants received a benefit from her; and, (2) an inequity resulted to Durr because of the Defendants' retention of the benefit. *Michigan Educ. Employees Mutual Ins. Co. v. Morris*, 460 Mich. 180, 198 (1999). If these elements are established, the law will imply a contract, but only in the absence of an express contract covering the same subject matter. *Belle Isle Grill Corp. v. City of Detroit*, 256 Mich.App. 463, 478 (Mich. Ct. App. 2003).

Here again, unjust enrichment is an equitable remedy, subject to the doctrine of unclean hands because of Durr's failure to make loan payments. More fundamentally, however, the modification agreement was an express contract that precludes Durr's claim for unjust enrichment.

### F.     Break in Title and Lack of Standing

The remainder of Durr's claims allege improper foreclosure proceedings. Durr first challenges First Franklin's prior assignment or assignments of the note and mortgage. But, Durr was not a party to any purported assignment so this claim fails. *Livonia Props. Holdings, LLC v. 12840–12976 Farmington Rd. Holdings, LLC*, 399 F. App'x 97, 102 (6th Cir. 2010) ("there is ample authority to support the proposition that a litigant who is not a party to an assignment

-12-

lacks standing to challenge that assignment."). Durr also generally alleges that Defendants "have not established any true chain of title[,] without [which] they lack standing" (Dkt. No. 1, Verified Compl., Ex. 2, p. 31). It appears Durr believes that Bank of America – as a servicer – was not a proper party to foreclose. She is incorrect. Michigan Compiled Laws § 600.3204(1)(d) provides, "a

party may foreclose a mortgage by advertisement if . . . the party foreclosing the mortgage is either the owner of the indebtedness . . . or the servicing agent of the mortgage."[6]

### G. New Claims Raised in Durr's Response Brief

Durr's response brief – though failing to directly address Defendants' arguments – raises two new claims: this Court lacks subject matter jurisdiction and Defendants violated the Fair Debt Collection Practices Act ("FDCPA"). Both claims lack merit. Defendants' removal was properly based on diversity jurisdiction, and Durr's Complaint, drafted by a lawyer, does not allege an FDCPA violation.

### V. CONCLUSION

Because Durr's Complaint fails to state a claim or raise any triable issue against Defendants, this Magistrate Judge **RECOMMENDS** that Defendants' motion be **GRANTED** and Durr's Complaint be **DISMISSED WITH PREJUDICE**.

---

[6] Defendants also correctly argue that Durr's counts of constructive trust and for an injunction are remedies rather than independent causes of action. *Gaymar Indus., Inc. v. FirstMerit Bank, N.A.*, 311 F. App'x 814, 817 (6th Cir. 2009) (constructive trust "is a remedy" which may only be imposed where there are grounds upon which to grant equitable relief.); *Terlecki v. Stewart*, 278 Mich. App. 644, 663, 754 N.W.2d 899, 912 (Mich. Ct. App. 2008) ("It is well settled that an injunction is an equitable remedy, not an independent cause of action.")

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated: October 22, 2013

### Certificate of Service

*I hereby certify that a copy of the foregoing document was served on the parties of record on this date, October 22, 2013, by electronic and/or first class U.S. mail.*

*s/Eddrey Butts*
*Case Manager to Magistrate Judge Mark A. Randon*